Good morning and may it please the court. I represent Luis Gonzalez. I will attempt to reserve five minutes of rebuttal in my argument. Your honors, this is a case about a false confession to burning a car. The jury ultimately acquitted my client of that conduct, but nevertheless the judge sentenced him under a purported clear and convincing evidence standard on that same conduct. Our first argument is that this confession never should have been presented at trial because it violated Miranda. It was obtained while my client was in custody within the definition of those cases following Miranda, and if you look at the factors that the court is supposed to consider, it clearly weighs in favor of custody. First, a language to summon my client to the interview. He was ordered by the probation officer to come to the probation office. It turns out it was a pretext. The FBI had contacted the probation officer to arrange this, but nonetheless he was ordered to do this, and government counsel conceded below that my client could not refuse to do so under pain of being revoked. He was then directed by the probation officer to wait at her desk while she, unbeknownst to him, directed the FBI agents to him. He was never released by her, although the agents said that, according to them, the probation officer didn't need him anymore. She never said that to him. He was basically a sitting duck waiting for the FBI to come. He was then escorted and agreed, at least initially, to be escorted to a small room outside of the bigger general room. The door was closed. The agents were obstructing his egress. At least one agent was between him and the door at all times. All these facts, by the way, the government agreed would be construed in my favor because they objected to my request for an evidentiary hearing, and the district court did so, at least purported to do so. He was isolated not only from the general public, but also from his probation officer, who is supposed to support as well as supervise him. Although the government counsel claims without any support in the record that she was familiar with this small room, absolutely no evidence of that. He'd only been supervised by the probation officer for about a month. There's actually no evidence in the record he'd ever been to the general office before, let alone the smaller room. And this isolation, this court has said, is key, not only in Craighead, but also other cases like Beran, Panez, and Kim. This interrogation lasted 90 minutes until my client attempted to leave unsuccessfully. He asked about getting a lawyer, and then these threats from the agents happened. This 90-minute duration, in many cases, this court has recognized, weighs in favor of a finding of custody. So what happened? The interrogation is getting more and more confrontational. They ask him will he take a polygraph, and he agrees to, although they never do that. That's obviously challenging his veracity. He asks about getting a lawyer, and they say that he doesn't need one because he's free to leave. Now, the words free to leave are important, but this court has held that you have to look at those words in context. And he tries to leave, and what happens is two things. An agent physically moved toward him as he's attempting to leave, and then make a verbal threat. And the threat is that they could come to his residence. The fact that it says residence is significant, he has nowhere to retreat to, make that as much a police-dominated atmosphere as the room. And it's also a show of authority. Well, he could do that pursuant to his probation condition anyway. I mean, and it has no apparent power to influence him to confess in this case unless he had another can of gas at home. Well, that's not the record. The record is that he felt threatened. No, no, but I mean it's not a coercive threat. It's not the kind of threat that would make somebody say, oops, in order to avoid that horrendous thing, I better fess up. Well, I respectfully disagree. And the fact that it's truthful doesn't mean it's less of a threat. The same was in Beran-Pénez. But in these cases where the interrogation has been at the home, that's been particularly significant to the court. So he – it's undisputed that he lies in order to protect his wife. So having them go to his home and presumably his wife could be there, have a police-dominated atmosphere at the home, it's exactly the type of threat that would be coercive and was. He sat right back down, especially in combination with the agents coming at him, and then made this false confession. This false confession was the only evidence that he had burned the car. It was introduced at trial, obviously, over our objection. We argue that it was false and demonstrably false, because among the things that he says is that his wife had no knowledge of the fraud ahead of time and the government conceded that that was false, and the jury acquitted. And while preserving the constitutional objection I have to the use of acquitted conduct at sentencing, let me focus on the – Well, that wasn't much of a concession. The government conceded – never mind. I think it was a significant – I think the statement was false. Yeah, I understand. It's a significant concession because it's not the only thing that was false, but I think maybe Your Honor is meaning that they had to concede it, of course. Absolutely, they were stuck with that. The district court, as it was required to apply a burden of clear and convincing evidence to the determination of whether the evidence was sufficient to support this finding that my client burned the car, notwithstanding the verdict, because it had such a disproportionate impact on the sentencing. Otherwise, his sentencing guideline range would have been about 24 to 30 months. In doing so, the district court relied on these factual findings that were clearly erroneous. For example, the district court at sentencing said that the confession was obtained without any kind of coercive circumstances. Well, even if this Court were to find that the circumstances don't add up to custody, you can't say that there were no coercive circumstances. The government concedes that any police interview or interrogation is going to involve some coercive circumstances. And the district court itself recognized that the duration of the interview itself could be a coercive circumstance. So that factual finding is clearly erroneous. The district court also says that the statements that my client made to the FBI fit the known facts so perfectly, and that's why he was convinced by clear and convincing evidence that it was true. It doesn't, and I'll go through how it doesn't. Now, the phenomenon of false confessions is well known, but I just want to be clear that I'm not saying a confession could never constitute clear and convincing evidence. It absolutely can. Here are some of the circumstances in which it would. It's not given under coercive circumstances. It's not demonstrably false. It's not inconsistent with the known facts. It's corroborated by independent evidence like forensics, like finding a gas can in this home, or a percipient witness that says they saw my client burning the car, where there's no motive to falsely confess. In each of those factors weigh, again, in favor of the finding that this was just not true. Numerous coercive circumstances. He was ordered to appear by the probation officer, who continued to direct his activities, provide a urine sample, directed to remain at the desk, accosted by the FBI without any warning, escorted to the small, isolated, closed room with the agents between him and the door. Over 90 minutes before he says, I think maybe I should get a lawyer, the request to take a polygraph, they bring up this terrorism thing, that we're investigating this case as terrorism. Of course, his wife has confessed the day before. They physically inhibit his attempt to exit by coming toward him and then verbally threaten him. So even if this is not in custody under a legal weighing, although I think it is, he can't say, like the district court did, that there are no coercive circumstances. Obviously, there are. And as I said, it's demonstrably false. He said he wasn't aware of any dry grass around there. In the previous case, Your Honor asked about where it is. The burn was actually by the side of a road out by the Byron Airport, a huge, grassy field. If you look way in the distance, you can see the little landing strip. It's not actually in the field. It's next to it, next to a big post. There's nothing but dry grass out there. It's just demonstrably false. Then he said that he walks home 15 miles in about an hour and a half. Again, there's no way that anyone could possibly do that. And, of course, the most important one, that his wife didn't have any information about the fraud, which is obviously false. The things that were consistent were inconclusive, that the car was taken from Ms. Pais' work to the airport. Well, that was well known. That it was burned with a gas from a can. Well, the gas can was still in the car when he and his wife went out to the tow yard. That's not much of a leap. That it was driven into a pole. The front end was obviously bashed in. The insurance adjuster went out there, who was no expert on accident reconstruction, said to her it looked like it hit a pole. And that this was part of insurance fraud. Again, this was all well known by that time. It's a month after the incident. And, again, no corroborating evidence without, except for the confession, the demonstrably false confession. There were no forensics. There was no recipient witness. And he had an obvious motivation that even the government agrees, which is to protect his wife. He says his wife had nothing to do with the fraud. And it's agreed by the parties that he did so because he wanted to protect her. Now, the government says, well, this proves that he must have burned it because he's trying to protect his wife. Well, that doesn't make any sense. Whether he burned it or not, he would falsely say to the police that he had burned it because it's not really going to work to protect his wife if he says that neither of them burned it. Right? They want someone to take the fall for this, and so he says it's him. This is, again, the district court recognized it has to be by clear and convincing evidence. The point you're making is what? That his confession wasn't trustworthy? It's not clear and convincing evidence that he actually burned it. The confession does not constitute clear and convincing evidence. And the standards are you arguing that all the evidence was insufficient? There is no other evidence. Oh, you're talking about a sentencing. A sentencing. Okay. I'm sorry. Yeah. It is just a sentencing issue. But it is acquitted conduct. The court applied a cross-reference, which I'm going to talk about next. He was obviously convicted of fraud. There's a cross-reference to arson. But the court has to make a finding, and everyone agreed that clear and convincing evidence was the right standard. And I submit that as an initial argument that that's wrong. It wasn't clear and convincing evidence, and so he shouldn't have applied the cross-reference. But the district court had an alternative basis that related to the definition of the word involved. Involved is the word in the arson cross-reference, and they said, well, even if he didn't burn it. And, in fact, even if he didn't know it was going to be burned or expect it was going to be burned, the word involved is really broad. And so the district court had this alternative definition of involved that would sweep in this other conduct. Well, that can't be right because relevant conduct 1B1.3A1 defines relevant conduct as that which is neither caused or foreseen by the defendant. So if, as the district court assumed in this alternative explanation or cross-reference, he didn't cause it or know it or expect it, you can't apply this cross-reference under the definition of relevant conduct. To do so would sweep in this absurd hypotheticals like the Oklahoma City bombing widow who, after the bomb goes off, she files a false insurance claim under the district court's construction of the word involved. Then she could be sentenced for murder. Doesn't make any sense. Let me go through the other remaining ones more quickly. Obstruction of justice, the district court found that my client had suborned or sentenced him on enhancement of the grounds that my client had suborned perjury but didn't make the adequate findings. Didn't make a finding about the witness's willful intent. Didn't make a finding about my client's procurement. And there's no evidence in the record about that. This was someone who was a very close friend of the family. They called each other cousin. There's absolutely no evidence to suggest that this person didn't come forward on their own rather than being induced by my client to testify. The government has other alternative justifications for obstruction that the district court rejected and make no sense. They say that he should get obstruction for the false confession. That's not right because it didn't hinder any prosecution or investigation. That's application notes 4G and 5B of 3C1.1. The district court also applied an aggravating role enhancement. He found, the district court found that my client was co-equal with his wife. The government wants to get around that, but that was the finding, that together they were co-equal. But he said that they were both managers over this hypothetical helper. District court said, well, how was he going to get home from the burn? He couldn't have walked home. He must have had a helper to drive him home. Well, there's absolutely no evidence of that. Even if my client had burned it, he could have hitchhiked or had a bicycle in the trunk. And even if someone else had driven him. How much did that add to the sentence? That's two levels. It was two levels. There's also no evidence, even if there was a driver, that my client organized or controlled them. It's not enough under the enhancement under 3B1.1 to organize the crime or to have a helper. You have to organize the person or control them. And there's just no – there was no finding of that. There's no evidence in the record. The government has apparently waived any harmless error claims, so I won't address that. Let me just briefly mention about the government's cross-appeal. The district court rejected that. It's a clear error standard. The government wanted an additional two levels for concealing another offense. Well, there is no other offense. And the enhancement doesn't apply to concealing evidence. There is no other offense here. It's not a crime to burn your own – I mean, sorry, not a crime to damage your own engine. And at the time of the fire, the car had not yet been reported stolen, so it wasn't concealing anything. The falsely confessed purpose that my client gave to burning the car was to destroy it, not to conceal it. And, in fact, it didn't – there's no evidence that it did conceal anything. The damage to the engine was well-documented. There's no evidence that an investigation of the engine, even after the fire, couldn't have revealed the damage to the engine. Okay. So these have a certain relationship to each other. Which do you think is the – what do you think is your strongest sentencing argument? Well, I think the last three are the strongest. I would – I think that's pretty cut and dry. But I also strongly urge the Court, even if the Court finds that my client was in – was not in custody. Excuse me. The last three are which? Yeah. The obstruction, the aggravating role, and then the rejection of the government's cross-appeal, which is the concealment. What about the overall complaint about the judge's speech? The speech about gaming the system? Yes. Yeah. Well, that is a problem. And our argument is that it's substantively unreasonable for the Court to say, I'm going to sentence you in this way because I believe – I find that you were gaming the system. I mean, that's just so close to this Court's decision in Medina Cervantes, overturning the sentence where the district court said, oh, you were thumbing your nose at the Court. I mean, we raised the defense. We made an argument.  There was nothing that we did at all to game the system. Okay. Unless there's – unless one of the Your Honors wants to rise to that, I will reserve the rest of my time for rebuttal. Thank you. May it please the Court, good morning. Laurie Gray again for the United States. Ms. Gramey, may I focus you in on two of the sentencing issues? I'd like to get your response on it. It strikes me that the district court failed to make adequate findings to support the instruction. That is, he just – there's nothing to show that he believed or found that Perez willfully, intentionally, deliberately, whatever, made a false statement that affected the verdict. And secondly, with respect to the role enhancement, it strikes me that there is no indication that even assuming there was a helper, that I – that Gonzales did or could direct the activities of the helper in absent findings to that effect that both have to go back. Let me begin by addressing the role and the offense, Your Honor. The court did make its finding that that third person was involved, a helper. And that tells you nothing about the ability to direct or whether there were directions or instructions or whatever. Well, with regard to that, it had to do with the defendant returning from the airport, the fact that this car was taken out to the airport and burned. Sure, but if I ask Judge Schroeder to give me a lift to the airport, I don't believe anybody would assume that I was directing or instructing her to do so. It's a request from a friend or a cousin or whomever to help out. I understand. I understand the court's concerns. So in our brief, we set forth an alternative theory which was the facts clearly demonstrate that the defendant exercised control over Piaz. And what he did is he told her, he admitted this in a taped conversation with the insurance company, that he told her to buy the insurance for this car. That's step one in this particular fraud. And the district court, in their brief what defendant attacked was that there had been no materiality finding. Well, don't we have to understand the basis on which the district court imposed this enhancement? Certainly. But you can make your finding based on the entire record, and the entire record in this case includes. No, I don't. My question was not what he could have based it on, but what he did in order to review and see whether that was something that was not within his discretion to do. I understand the court's question. My point to the court is that looking at the facts, it shows here that, indeed, defendant did direct someone beside the third-party helper, that I agree with the court, the facts are clear. But the point is that the court didn't tell us that. You're telling us that. I am, based on the evidence that's been held. Doesn't the judge have to tell us what he's basing his decision on? You can make a decision based on the facts set forth in the record. And I am submitting to the court that those facts are detailed, that he, in fact, directed his wife to take the first steps of that decision. Isn't that asking the word tell to carry an awful lot of weight? Because I might, again, say, take me to the airport, and I think it would be interpreted not as in the direction or instruction, but rather as a shorthand, please will you drive me to the airport, or as a suggestion. You know what you should do? Call Progressive. I agree. You know, so, I mean, to me, the fact that he says call Progressive isn't an instruction so much as it is a suggestion as to what insurance company she should call, having decided that they're going to commit this fraud. Well, that's the key part. Your Honor, asking for someone to give a ride to the airport isn't part of a larger scheme or conspiracy. Him saying, you get insurance for this car, was the first step. You call Progressive. I mean, don't call State Farm. Call Progressive. It's not so much call. It's getting the insurance. Okay. What he said was get the insurance. That's the first step in this conspiracy. That's directing her to take a step that's going to make this a successful scam. So that would be with regard to the role of the offense. With regard to obstruction of justice, there were two different ways that the Court said that applied. The first was that the Court found that the defendant, it would have been defendant, putting up Raul Perez as a false alibi witness. And the Court specifically said, I do not buy his testimony. Based on all the evidence at trial, the jury may have believed it, but I don't. Okay. Well, if the claim, if the enhancement's based on subordinating, I don't know how to pronounce it, perjury, as contrasted with perjury, don't you still have to show that he was, Perez was put up to it? I'll avoid the word. Was put up to it. Thereby, Perez, and Perez himself then bought into the program by deliberately telling a lie that had an effect on the outcome of the trial. That would be correct. Okay. So there's no finding of any of the latter two or three elements. The only finding is Gonzales put Perez up to it. There's no finding that Perez intentionally made a falsehood that affected the outcome of the trial. The Court said then alternatively, alternatively, the defendant lied when he gave his statement to the FBI, that that's a false statement and that would be subject to two points under sub G, providing a materially false statement to law enforcement offers that significantly obstructed or impeded the investigation. And with regard to that, the district court made a very detailed finding. That's in excerpts of record 22 and 23. With regard to that, the district court says it was material. He's talking about, the Court is talking about the defendant's statement, beginning on excerpt of record 21. The Court goes on excerpt of record 22 and says, assuming that defense counsel's version is correct, without any doubt then the lie was a clear-cut obstruction of justice. Mr. Gonzales lied to the FBI when he confessed. It was material who set the fire. There's no doubt in the Court's mind that the FBI and the United States relied upon the confession to bring this case to trial and form their investigation. So months and months go by in reliance. And the Court said you know what, let me just hear your view. I read that as, in effect, a throwaway. The district judge is saying, look, I think there was obstruction of justice here. But you know what? Even if your theory, Gonzales, is right, which I don't think it is, the district court is saying, even if your theory were correct, then he's lied to the FBI, because that otherwise would be completely inconsistent with the district judge's foundational finding that he confessed, and the district judge believed he confessed, therefore applied that enhancement. So I don't believe you can, on the one hand, affirm the base enhancement as relevant and affirm the obstruction of justice enhancement on the alternative theory. It's totally inconsistent. Just for clarification, the Court did not enhance the defendant's sentence based on the defendant's confession. He enhanced it based on, okay, I'll give you the benefit of the doubt. If you say it's true, then the lie is somewhere either at trial or before, and he says that that let the real culprits get away. That's where he finds the obstruction to an investigation. Kagan. But that would be completely inconsistent with finding relevant conduct as confessing to having torched the car. Yes? I don't agree, but I don't agree, because of the court's finding. But I understand the question from the court. So with regard to the obstruction of justice, it is as we've gone back and forth. He based it on either Raul Perez testifies falsely, and he said it would have been you, defendant, putting him on the stand. And I find from all the evidence in the case, that was an inconsistent, false story. Or alternatively, if that story was true, then you lied at the beginning, and for that reason, two points enhancement, and specifically found it was material. Again, with regard to the role of the fence, the record is what the record is on that particular point. I'd like to address the cross-reference, which that goes to Your Honor's question with regard to the relevant conduct. If there's any questions with regard to the enhancement for the use of fire, the Court found that the language for the enhancement was involved, involved arson, and that that was a much less strident standard. And in this particular case, it was clear that arson was involved in this crime, and the Court said that alone would mandate implication of that particular cross-reference. But the Court said, I'm going to go one step further in case this comes up to the Ninth Circuit, and I'm going to find by clear and convincing evidence that it was the defendant who set that fire, and goes through the record and makes specific findings in that regard. If there are any questions on that, I'm happy to answer. Otherwise, I'd like to address the government's appeal in this matter, which is regard to the district court not adding the two points for an enhancement to conceal under 2K14B1. That was a procedural error, both factually and legally, because the facts showed that the arson in this case was part and parcel of the whole scheme. It would not have succeeded without destroying the engine so that the claim could be submitted saying the engine was in excellent condition. Legally, the district court made the distinction that, well, the fire hadn't yet occurred. So for that reason, it's not a crime. Scalia, The crime hadn't yet occurred. Excuse me. You're right. The crime had not yet occurred. But it doesn't matter. Timing is not an element of that particular offense or of that particular sentencing enhancement. What matters is intent. And I cite to the Court the Giggy case, which is the only case published on this with regard to use of fire, and there they used arson to conceal burglary. And specifically, they set fires to divert attention so that they could then go and commit burglaries across town. Why did this arson conceal? Here, the arson was used to conceal, to divert attention from the engine. And the further crime was the wire fraud. And for that reason, I would submit that the district court clearly erred in not applying the two-point enhancement. Well, it was to facilitate a crime. It did facilitate, but it also It did facilitate, but it also Rather than to conceal a crime. It did both, Your Honor. Well, can you conceal something that doesn't exist? That's what happened in Giggy. The fires were set ahead of time so that the police and law enforcement would ride to a different part of town and leave them free to burglarize a warehouse at the other end of town. That's the same thing here. Where is that decision from? That decision, it's a district court decision, and it's from Maine, and it's cited in the briefs. So it is a district court decision? Yes. It was cited in the briefs. It's at 501F sub 2nd, 237. So there are two district judges who think that? Yes. Okay. With regard to Defendant's motion, or excuse me, with regard to his first challenge on the pretrial statements, I just want to make a couple clarifications. According to the declaration of the defendant, his egress was not blocked. Defense counsel just argued that he was blocked once they got into the room. What the defendant says is, one agent was situated between me and the door so that I could not leave the room without passing by that agent. That's different than blocking. That's an excerpt of Record 83. The evidence shows, as you go through each of these different factors, that Defendant was not in custody and Miranda did not apply. And if you have any questions, I would be happy to address that particular issue. Otherwise, I will submit on the briefs. I don't appear to be in. Thank you. Thank you. Just very, very briefly, Your Honors. The government would be required for its alternative theory on the manager to have a co-equal. The court found that the district court committed a clear error in finding that they were co-equal. They have not provided any basis for Your Honors to do so. That was the findings, that they were co-equal. On the issue of the false statement, as Judge Reimer, you said, it's a legal impossibility to affirm on this alternative basis if, at the same time, you affirm the cross-reference. It also wasn't a finding. I mean, this was the judge hypothesizing, I think as Your Honor said, even if everything you say is right, then it would still be an obstruction. But another key point is that it doesn't meet the requirements of the guidelines. The application notes specifically exclude false statements to law enforcement not under oath, except under very specific circumstances. And it's not just materiality. It had to have a hindering effect on either the prosecution or investigation, and there was none here. On concealment, in the Gigi case, I think government counsel misspoke, the fire and then the burglaries happened concurrently. It wasn't set one and then later go and burglarize. They were at the same time, and that's what's so different about our case. And I believe what I said about in the room where he was interviewed was obstructed. I think I didn't say blocked. I tried to be careful. I think a fair assessment, again, we're looking at the facts as we've alleged them with the inferences as well, because the government invited the court to deny my request for evidentiary hearings that it was obstructed, and that was the basis. If there are no questions, I'll submit. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned. All rise.
judges: Schroeder, Reinhardt, Rymer